# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### CASE NO. 20-21839-CIV-COOKE/GOODMAN

DESTINY SHELTON,

    Plaintiff,

v.

11USA GROUP, LLC, et al.,

    Defendants.

_____/

### REPORT AND RECOMMENDATIONS ON DEFENDANTS' [ECF No. 15] MOTION TO COMPEL ARBITRATION, TO STAY PROCEEDINGS AND TO DISMISS CLAIMS OF OPT-IN PLAINTIFFS AND [ECF No. 30] MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS PENDING ARBITRATION

Plaintiff Destiny Shelton, individually and on behalf of all others similarly situated, brought a collective action against Defendants 11USA Group, LLC d/b/a E11EVEN, GR OPCO, LLC d/b/a E11EVEN Miami, Dennis DeGori, Frances K. Martin, and DOES 1 through 10, inclusive, (collectively, "Defendants"). [ECF No. 1]. Defendants operate E11EVEN Miami, an adult-oriented entertainment facility or 24-hour club (a/k/a the "Club") featuring nude or semi-nude female entertainers. Plaintiff filed her complaint for damages against Defendants, alleging that Defendants are evading the mandatory minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), evading the mandatory minimum wage and overtime provisions

of the FLSA, illegally absconding with Plaintiff's tips, and demanding illegal kickbacks, including in the form of "House Fees," as well as engaging in other wage violations.

In response to the Complaint, Defendants filed a Motion to Compel Arbitration, to Stay Proceedings and to Dismiss Claims of Opt-In Plaintiffs [ECF No. 15] and a later-submitted Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration [ECF No. 30]. The first motion to compel arbitration [ECF No. 15] was filed in response to claims by the original Plaintiff, Destiny Shelton, and Opt-In Plaintiffs Danielle Cruz, Myah Knighton-Black, and Naomi Smith. The second motion to compel arbitration [ECF No. 30] was filed in response to Opt-In Plaintiff Celina Konegan joining the collective action after the other Plaintiffs [ECF No. 27].

Plaintiffs filed responses in opposition to the two motions [ECF Nos. 20; 31] and Defendants filed a reply in support of their first motion to compel arbitration [ECF No. 22]. At the hearing on the motions, defense counsel stated that Defendants would not be filing a reply in support of the second motion to compel arbitration. Regardless of that informal, oral notice, the time to do so has since passed.

United States District Judge Marcia G. Cooke referred the two motions to the Undersigned for a Report and Recommendations [ECF No. 32] and the Undersigned entertained oral argument from the parties on the two motions for more than two hours [ECF Nos. 33; 34; 37]. For the reasons outlined below, the Undersigned **respectfully recommends** that Judge Cooke **grant** Defendants two motions to compel arbitrations

between Plaintiffs and Defendants, which would result in a stay of the instant case. To the extent that Defendants' motions seek the *dismissal* of the Opt-In Plaintiffs, the Undersigned **respectfully recommends** that the motion to dismiss be **denied** at this point in the litigation. The claims will be *stayed* pending arbitration of individual claims filed by the Plaintiffs.

Finally, the Undersigned **respectfully recommends** that Judge Cooke **deny without prejudice** Ms. Cruz's claims because it is unclear whether she ever worked at the Club, or, if she did, whether she ever signed an agreement with an arbitration provision. Determining the answers to those questions will require additional discovery and perhaps even an evidentiary hearing. Alternatively, Ms. Cruz's counsel might decide to voluntarily dismiss her claim and not proceed with an individual arbitration claim if he were to determine that she never worked at the Club or if he is unsure of her prior employment there and does not feel ethically comfortable continuing with her claim in any forum.

## I.  Factual Background

In her Complaint, Plaintiff Destiny Shelton alleges that she was employed by Defendants between July and October 2017 as a dancer at the Club. During her employment with Defendants, Plaintiff alleges that she was denied minimum wage payments and denied overtime "as part of Defendants' scheme to classify Plaintiff and other dancers/entertainers as 'independent contractors.'" [ECF No. 1, p. 2].

Plaintiff claims that E11EVEN failed to pay her minimum wages and overtime wages for all hours worked in violation of the FLSA, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a). Additionally, she claims that Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206.

As a result of the alleged FLSA violations, Plaintiff brought this collective action against Defendants to recover the unpaid overtime compensation and minimum wage owed to Plaintiff individually and on behalf of all other similarly situated employees of the Club. Since Shelton initiated the action, the following individuals have opted in as Plaintiffs: Danielle Cruz,[1] Myah Knighton-Black, Naomi Smith, and Celina Konega (the "opt-in Plaintiffs"). [ECF Nos. 4; 8; 16; 17; 19; 27]. Each are current or former dancers at E11EVEN during the relevant time period.

Plaintiff and the opt-in Plaintiffs seek to recover "double damages for failure to pay minimum wage, overtime liquidated damages, interest, and attorney's fees." [ECF No. 1, p. 3].

Defendants contend that on July 14, 2017, Plaintiff entered into a Dancer Performance Lease with Defendant GR OPCO, LLC in which she agreed to arbitrate any

---

[1]   The status of Danielle Cruz as an Opt-In Plaintiff will be discussed in more detail below in Section III, Subpart C.

claims arising from her relationship with Defendants and waived all rights to pursue such claims as part of a collective or class action. [ECF Nos. 15, p. 1; 15-1, ¶¶ 20(a)-(b)]. Specifically, the arbitration provisions expressly require Plaintiff to arbitrate claims "arising out of, or relating to [the terms of the Agreement] entertainer performing and/or working at the club at any time, or the termination of such performance or work." *See* ECF No. 15-1, Agreement at ¶21. Defendants also claim that the Opt-In Plaintiffs entered into a business relationship with Defendants pursuant to a contract that prohibits collective adjudication of disputes and includes the same arbitration clauses. [ECF No. 15, p. 2].

Accordingly, Defendants filed the two instant motions to compel Plaintiffs to arbitrate their claims and to stay or dismiss the case until the claims are arbitrated. [ECF Nos. 15; 30]. Plaintiffs counter Defendants' argument and contend that the arbitration clauses found in the Plaintiffs' contracts run afoul of Eleventh Circuit precedent because they essentially require the employees seeking to enforce their FLSA claims to pay arbitrators' fees and costs. Plaintiffs argue that the arbitration clauses are both procedurally and substantively unconscionable.

**II.    Legal Standard**

The Federal Arbitration Act ("FAA") governs the validity of an arbitration agreement. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (citation omitted). The FAA "embodies a liberal federal policy favoring arbitration

5

agreements." *Id.* (internal quotations omitted). The FAA provides that a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (internal quotations and citations omitted).

**III.   Analysis**

The Plaintiffs each signed materially identical copies of a "Dancer Performance Lease" (the "Agreements") that purports to govern their relationships with the Defendants. The Agreements contain the following provisions requiring arbitration:

> IN ORDER TO RESOLVE DISPUTES THAT MAY ARISE OUT OF YOU PERFORMING AT THIS CLUB, THE CLUB HAS ESTABLISHED A PRIVATE "ARBITRATION" PROCESS SET OUT IN THIS SECTION 21. ARBITRATION IS SIMILAR TO A COURT PROCEEDING, BUT IT'S LESS FORMAL, LESS TIME-CONSUMING, AND CAN BE LESS EXPENSIVE THAN GOING TO COURT. THIS IS THE ARBITRATION PROCESS THAT WILL GOVERN FOR ANY NON-ADMINISTRATIVE DISPUTES:
>
> A. ANY CONTROVERSY, DISPUTE, OR CLAIM ARISING OUT OF, OR RELATING IN ANY WAY TO, THIS LEASE, ITS TERMINATION, ENTERTAINER PERFORMING AND/OR WORKING AT THE CLUB AT ANY TIME, OR THE TERMINATION OF SUCH PERFORMANCES OR WORK (COLLECTIVELY IN THIS PARAGRAPH 21, A "CLAIM" OR "CLAIMS"), SHALL BE RESOLVED EXCLUSIVELY BY <u>BINDING ARBITRATION</u> IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT (THE "F.A.A.").
>
> THIS REQUIREMENT TO ARBITRATE ANY AND ALL NON-ADMINISTRATIVE CLAIMS APPLIES REGARDLESS OF WHETHER SUCH A CLAIM IS BASED UPON CONTRACT, TORT OR OTHER COMMON LAW, STATUTE, REGULATION, ORDINANCE, OR OTHERWISE, AND REGARDLESS OF WHETHER A CLAIM BY ONE PARTY IS ONLY AGAINST THE OTHER PARTY OR IS AGAINST PERSONS OR ENTITIES ASSOCIATED IN ANY WAY WITH THE OTHER

> PARTY (INCLUDING BUT NOT LIMITED TO PAST, PRESENT, AND FUTURE OWNERS, DIRECTORS, MANAGERS, OFFICERS, EMPLOYEES, CONSULTANTS, LANDLORDS, LICENSORS AND/OR AGENTS, WITH EACH SUCH INDIVIDUAL AND ENTITY ALSO BEING CONSIDERED TO BE A "PARTY" FOR PURPOSES OF THIS PARAGRAPH 21).
>
> THE ARBITRATION PROCEEDING SHALL OCCUR IN THE STATE OF FLORIDA, AND SHALL BE ADMINISTERED BY AND INDEPENDENT, NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD – SUBJECT ONLY TO THE RESTRICTIONS CONTAINED IN THIS PARAGRAPH 21 – ANY RELIEF AVAILABLE IN A COURT. <u>THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY.</u>
>
> ***
>
> B. ENTERTAINER AND THE CLUB AGREE THAT ANY AND ALL CLAIMS THAT THEY MAY HAVE AGAINST THE OTHER (AND/OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH THE OTHER PARTY), SHALL BE BROUGHT AND MAINTAINED INDIVIDUALLY BY THAT PARTY IN ARBITRATION; THAT THEY WILL NOT CONSOLIDATE THEIR CLAIMS WITH THOSE OF ANY OTHER PERSON OR ENTITY; THAT THEY WILL NOT SEEK CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION TREATMENT FOR ANY CLAIM; AND THAT THEY WILL NOT PARTICIPATE, IN ORDER TO RESOLVE A CLAIM, IN ANY CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION AGAINST THE OTHER PARTY (AND/OR AGAINST PERSONS OR ENTITIES ASSOCIATED WITH THE OTHER PARTY).

[ECF Nos. 15-1, ¶ 21; 30-1, ¶ 21 (emphasis in original)].

Defendants argue that Plaintiffs must arbitrate their claims against Defendants, pursuant to their Agreements. In response to the Defendants' motions to compel arbitration, Plaintiffs allege that the arbitration provisions of their Agreements are

unconscionable, and therefore, unenforceable. In particular, the Plaintiffs challenge Section 21 of the Agreements, which provides:

> EACH PARTY SHALL INITIALLY BE RESPONSIBLE FOR THEIR OWN ATTORNEY FEES AND OUT-OF-POCKET COSTS ASSOCIATED WITH THE ARBITRATION PROCEEDING. THE ACTUAL COSTS OF ARBITRATION (THE ARBITRATOR'S FEES AND RELATED EXPENSES) SHALL BE BORNE EQUALLY BY THE ENTERTAINER AND THE CLUB UNLESS APPLICABLE LAW REQUIRES THE ARBITRATOR TO IMPOSE A DIFFERENT ALLOCATION.

[ECF Nos. 15-1, ¶ 21; 30-1, ¶ 21 (emphasis in original)].

Plaintiffs oppose Defendants' motions to compel arbitration, arguing that the Agreements are unenforceable because they are procedurally and substantively unconscionable under Florida state law.

### A. The Arbitration Agreements Are Not Unconscionable.

The parties dispute whether the arbitration provisions in Plaintiffs' Agreements are unconscionable, and therefore unenforceable. The Court must look to state law to determine whether an arbitration provision is unconscionable, and consequently the provision is interpreted according to state law rules of contract construction. *See Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007) (internal citations omitted) ("The FAA allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically. Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements.").

Florida law requires a "showing of *both* procedural and substantive unconscionability" to invalidate a contract. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir. 2010) (emphasis in original). The Undersigned finds that Plaintiffs' claim that the Agreements are unconscionable fails under both the substantive and the procedural prongs of the two-part analysis.

    i. ***Substantive Unconscionability***

In order for the Agreements to be substantively unconscionable, Plaintiffs need to demonstrate that "the terms of the contract are unreasonable and unfair." *Powertel, Inc. v. Bexeley*, 743 So.2d 570, 574 (Fla. 1st DCA 1999). The Court must consider "whether the disputed terms limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes." *E.E.O.C. v. Taco Bell of Am., Inc.*, No. 8:06-cv-1792-T-30MAP, 2007 WL 809660, at *1 (M.D. Fla. Mar. 15, 2007) (citing *Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d 990, 992 (Fla. 4th DCA 2004)). An arbitration provision may be unenforceable if it "preclude[s]" a plaintiff "from effectively vindicating his federal statutory right in the arbitral forum." *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1259 (11th Cir. 2003) (holding that the fee-shifting provision in the arbitration agreement did not by itself render the agreement unenforceable, and requiring employee to arbitrate claim in the absence of demonstrating that the high cost of arbitration precluded him from "vindicating his Title VII rights in the arbitral forum").

Plaintiffs argue that "[u]nder the FLSA, an award of reasonable attorney's fees is mandatory to a prevailing party plaintiff, but that the arbitration agreement here precludes the recovery of such fees as they are not explicitly stated." [ECF No. 20, p. 9]. The Undersigned finds that the attorney's fees and costs provision within Section 21 of the Agreements *does* in fact deny Plaintiffs their basic statutory rights under the FLSA to guaranteed attorneys' fees and costs if Plaintiffs were to prevail.

Section 21 states that "the actual costs of arbitration (the arbitrator's fees and related expenses) shall be borne *equally* by the entertainer and the club . . ." [ECF Nos. 15-1, ¶ 21; 30-1, ¶ 21 (emphasis added)]. As Plaintiffs argue, "Plaintiffs' rights under the FLSA cannot be waived. 29 U.S.C. § 253 specifically provides that plaintiffs' rights to overtime and liquidated damages and other rights under the FLSA **are not waivable**." [ECF No. 20, p. 9 (emphasis in original)].

Nevertheless, as Defendants point out, Plaintiffs' Agreements contain a "severability" clause. [ECF Nos. 15-1, ¶ 19; 31-1, ¶ 19]. Section 19 of the Agreements states:

> IF ANY PROVISION OF THIS LEASE IS DECLARED TO BE ILLEGAL OR UNENFORCEABLE, THIS LEASE SHALL, TO THE EXTENT POSSIBLE, BE INTERPRETED AS IF THAT PROVISION WAS NOT A PART OF THIS LEASE; IT BEING THE INTENT OF THE PARTIES THAT SUCH PART BE, TO THE EXTENT POSSIBLE, SEVERABLE FROM THIS LEASE AS A WHOLE.

*Id.*

In light of Section 19, "Plaintiffs fail to satisfy the substantive prong of the unconscionability analysis because the allegedly unconscionable contract terms are severable from the rest of the agreement between the parties." *See Aquino v. BT's on the River, LLC*, No. 20-20090-CIV, 2020 WL 4194477, at *3 (S.D. Fla. July 21, 2020) (compelling arbitration after determining the offensive provisions identified by plaintiff could be severed pursuant to a severability clause contained in the "Lease Agreement" between a dancer and an adult entertainment club).

Plaintiffs cite to *Hudson v. P.I.P., Inc.*, 793 F. App'x 935 (11th Cir. 2019) as an example of the Eleventh Circuit holding that "a similar provision in an arbitration agreement was unenforceable as contrary to the provisions of the FLSA." [ECF No. 20, p. 8]. However, as discussed at the hearing on Defendants' pending motions to compel, *Hudson* actually supports the Defendants' position that the offending arbitration provision can be severed from the remainder of the otherwise-valid agreement. [ECF No. 22, p. 4]. In *Hudson*, the Court held that "if a provision is not enforceable, then the court must determine whether the unenforceable provisions are severable." *Id.* at 938. Thus, *Hudson* stands for the proposition that an agreement to arbitrate that contains unenforceable provisions is nevertheless enforceable if those provisions can be severed from the rest of the contract.

As noted, the Undersigned recognizes that the Agreements at issue contain a severability clause at Section 19 which allows the Court to sever the offending terms and

enforce the rest of the provision requiring arbitration. [ECF Nos. 15-1, ¶ 19; 31-1, ¶ 19]. "Under these circumstances, where 'the offensive terms are severable,' 'the court must compel arbitration according to the remaining, valid terms of the parties' agreement.'" *Aquino*, 2020 WL 4194477, at *4 (citing *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005)).

"But before severing the unenforceable provision, the Court must first make sure that the unenforceable provision does not go to the 'essence' of the parties' agreement." *Aquino*, 2020 WL 4194477, at *4 (citing *Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. Of U.S. & Canada v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821-22 (Fla. 1953)). The newly-severed Agreement, which has been revised to remove the offending language, must still reflect the "intention of the parties" and contain valid promises by both sides. *Local No. 234*, 66 So. 2d at 822. A court makes this determination "by a fair construction of the terms and provisions of the contract." *Id.*

After severing the attorney's fees and costs portion of Section 21 from the remainder of the Agreements, the Undersigned finds that parties have valid Agreements to arbitrate, and **respectfully recommends** that Judge Cooke **grant** the pending motions to compel arbitration and stay the proceedings in this case while the parties proceed with arbitration.

### ii. *Procedural Unconscionability*

For this prong of the unconscionability test, Plaintiffs argue that the "Lease Agreements," which are 12 pages long, were presented to Plaintiffs "on a take-it-or-leave-it basis with no opportunity to negotiate the terms. Moreover, there is no clause providing that they had the power or option to opt-out of any provision or clause." [ECF No. 20, pp. 6-7]. Plaintiffs also claim that there is a disparity in bargaining power because Plaintiffs are "young adult women needing employment" and Defendants "likely had counsel draft and prepare" the Agreements. *Id.* at p. 7.

The Undersigned finds Plaintiffs' procedural unconscionability arguments to be unpersuasive and unsupported by adequate, competent evidence.

"The procedural component of unconscionability concerns the manner in which the contract was entered. It involves consideration of . . . the relative bargaining power of the parties and their ability to understand the contract terms." *Dorward v. Macy's Inc.*, No. 2:10-CV-669-FTM-29, 2011 WL 2893118, at *5 (M.D. Fla. July 20, 2011) (citing *Orkin Exterminating Co. v. Petsch*, 872 So.2d 259, 265 (Fla. 2d DCA 2004)).

"Courts must consider the following four factors to determine whether a contract is procedurally unconscionable under Florida law: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a 'take-it-or-leave-it' basis; and (4) the

13

complaining party's ability and opportunity to understand the disputed terms of the contract." *Dorward*, 2011 WL 2893118, at *5.

The "central question" is "whether the consumer has an absence of meaningful choice in whether to accept the contract terms." *Pendergast*, 592 F.3d at 1135 (citing *Belcher v. Kier*, 558 So.2d 1039, 1042 (Fla. 2d DCA 1990)). When assessing procedural and substantive unconscionability, "a balancing approach is employed allowing one prong to outweigh another provided that there is at least a modicum of the weaker prong." *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014).

At this point in the analysis, the Undersigned need not examine the alleged procedural unconscionability prong because the Undersigned already ruled out the possibility of substantive unconscionability when the offending term was severed from the Agreements. As mentioned above, the unconscionability analysis requires both substantive *and* procedural unconscionability. *See Pendergast*, 592 F.3d at 1134 (finding that Florida law requires a "showing of *both* procedural and substantive unconscionability" to invalidate a contract). Nevertheless, the Undersigned will briefly address Plaintiffs' unconvincing procedural unconscionability argument.

Plaintiffs wholly fail to demonstrate through evidence (or anything more than general, unsupported allegations) that procedural unconscionability occurred in the bargaining phase of the agreement between the parties. This is not enough to rise to the level of a finding of procedural unconscionability.

For example, in *Lujan v. Carnival Corp.*, No. 11-23826-Civ-SCOLA, 2012 WL 1104253, at *3 (S.D. Fla. Apr. 2, 2012), a Peruvian national who signed a seafarer's agreement that contained an arbitration clause argued that procedural unconscionability occurred because he was required to sign quickly and without an opportunity to properly review the Agreement or seek advice of counsel concerning its terms. The Court granted the employer's motion to compel arbitration, finding that such allegations were "insufficient to avoid arbitration." *Id.* The court found that while a plaintiff that is "rushed into signing an agreement without adequate time to review upon fear of losing employment surely faces a tough choice, this does not amount to duress, nor does it mean that the agreement was invalidly formed." *Id.; see also Koda v. Carnival Corp.*, No. CIV. 06-21088, 2007 WL 1752410, at *3 (S.D. Fla. Mar. 30, 2007) (upholding arbitration agreement where "plaintiff allege[d] he was put in a difficult 'take it or leave it' situation when presented with the terms of employment, which he blindly entered into without a clear understanding of the terms of the contract").

Similarly, Plaintiffs fail to provide any evidence whatsoever that Plaintiffs were presented with their agreements on a take-it-or-leave-it basis, that they were unreasonably rushed when signing the agreements, or that they did not understand what they were signing and/or lacked the ability to understand the terms of the agreement other than the demeaning suggestion that they were merely "young adult women needing employment." [ECF No. 20, p. 7]. The Undersigned is not convinced.

### B.     Denial of Defendants' Motion to <u>Dismiss</u> the Opt-In Plaintiffs

Defendants argue that the Opt-In Plaintiffs should be dismissed from this case because they have not been certified as parties to any collective action and "collective action waivers, such as the one at issue her, are valid, enforceable, and should be enforced in this case." [ECF No. 15, p. 10].

Defendants also argue that because Shelton is unable to maintain her action because she signed an agreement with an arbitration provision and waived her rights to pursue any claim as a collection action or class action, there can be no action for the Opt-In Plaintiffs to opt-into in the first place.

The Undersigned disagrees with Defendants and finds that at this point in the litigation, when discovery has not yet been completed, the Opt-In Plaintiffs should not be *dismissed* from the lawsuit.

As a matter of first impression, employees who opt into a collective action become party plaintiffs upon the filing of their written consents. *See Mickles v. Country Club, Inc.*, 887 F.3d 1270 (11th Cir. 2018). There are two requirements for opt-in plaintiffs under the FLSA collective action statute. First, the named plaintiff must file on behalf of herself and "other similarly situated employees." 29 U.S.C. § 216(b). This requirement has been met. *See* ECF No. 1, p. 1 ("Plaintiff Destiny Shelton ('Plaintiff'), individually and on behalf of all others similarly situated . . .").

The second requirement is that the opt-in employees must give their "consent in writing to become such a party and such consent [must be] filed in the court in which such action is brought." 29 U.S.C. § 216(b). This requirement has also been met, as the Opt-In Plaintiffs, Danielle Cruz, Myah Knighton-Black, Naomi Smith, and Celina Konega, filed their statements of claims and consents. [ECF Nos. 4; 8; 16; 17; 19; 27].

Thus, the Opt-In Plaintiffs remain party plaintiffs until the district court determines they are not similarly situated and dismisses them from the case; however, the parties in this case have not yet reached that stage of litigation. *Mickles*, 887 F.3d at 1276; *see also Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104 (9th Cir. 2018) (finding that all individuals who opt in to a FLSA action prior to conditional certification become party plaintiffs with the same status in relation to the claims as do the named plaintiffs and remain so until the district court determines they are not similarly situated and dismissed them).

Accordingly, the Undersigned **respectfully recommends** that Judge Cooke **deny** Defendants' request to dismiss the Opt-In Plaintiffs from the case at this point in the litigation. However, other than Ms. Cruz, the Opt-In Plaintiffs signed arbitration agreements, so they should be required to pursue individual arbitration claims (with the offending provision severed), and this federal court lawsuit should be *stayed* pending resolution of the arbitration (should they each decide to file one).

### C. Danielle Cruz

Danielle Cruz is an Opt-In Plaintiff in this case; however, Defendants can find no record that she ever worked at the Club. [ECF No. 39]. In her consent form, Ms. Cruz could state only that "[t]o the best of [her] knowledge . . . [she] worked for E11even as a dancer at some point between May 1, 2017 and the present." [ECF No. 4-1]. Even after Plaintiffs' counsel provided specific, personal identification information and possible alias names for Ms. Cruz, the Club could still find no record that she ever worked at the Club. [ECF No. 39].

At this point, the Undersigned cannot recommend that Judge Cooke simply dismiss Ms. Cruz's case and compel arbitration because there is no signed arbitration agreement between Ms. Cruz and Defendants and no sufficient evidence that she agreed to arbitration.

It is possible that the arbitration matter for Ms. Cruz may be resolved by an evidentiary hearing or by summary judgment because the issue of whether she in fact ever worked for Defendants is a factual dispute. It is possible that Ms. Cruz could provide the names of other dancers at the Club who could confirm that she worked there during the relevant timeframe, or perhaps Ms. Cruz can find photos or videos of herself dancing at the Club as evidence of her employment there.

The issue of whether Ms. Cruz worked for Defendants goes to the heart of any potential claim. If she never worked as a dancer at the Club, then the Court cannot reach

the arbitration issue because she never would have been presented with an Agreement with an arbitration provision in the first place.

Ms. Cruz and her counsel will need to comply with Rule 11 and their due diligence responsibilities and confirm whether she worked at the Club in the first place. If it turns out that she *did not* work at the Club, then there may be consequences for Ms. Cruz and her counsel if they persist in pursuing her claim. If there is evidence that she did work at the Club, then Defendants can refile their motion to compel arbitration if the facts support such a motion. If, on the other hand, there is insufficient factual grounds to support Ms. Cruz's "belief" that she danced at the Club, then she would, presumably, withdraw this lawsuit and not pursue arbitration.

## IV.   Conclusion

Having determined that the offending provisions identified by the Plaintiffs are severable, and in the absence of any evidence of procedural unconscionability, the Undersigned **respectfully recommends** that Judge Cooke **compel** arbitration of the claims brought by Destiny Shelton, Danielle Cruz, Myah Knighton-Black, Naomi Smith, and Celina Konegan, and **stay** this case with respect to those specific Plaintiffs. *Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1032 (11th Cir. 2003) ("Because any invalid provisions are severable, the underlying claims are to be arbitrated regardless of the validity of the remedial restrictions."). Additionally, the Undersigned **respectfully recommends** that Judge Cooke **deny** Defendants' motion to *dismiss* the claims of the Opt-

In Plaintiffs at this stage in the case and **deny without prejudice** the motion to compel arbitration against Ms. Cruz.

V.   **Objections**

The parties will have fourteen (14) calendar days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) calendar days of the objection. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED in** Chambers, in Miami, Florida, on November 20, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record