**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA- MIAMI DIVISION**

DESTINY SHELTON, an individual, MYAH
KNIGHTON-BLACK, an individual, NAOMI
SMITH, an individual, CELINA KONEGAN,
an individual, individually and on behalf of all
others similarly situated,

      Plaintiffs,

**v.**

11USA GROUP, LLC dba E11EVEN, a
Florida Limited Liability Corporation; GR
OPCO, LLC dba E11EVEN MIAMI, a Florida
Limited Liability Corporation, DENNIS
DeGORI, an individual; FRANCES K.
MARTIN, an individual; and DOES 1 through
10, inclusive,

      Defendants.

_____ /

**Case No.: 1:20-cv-21839-MGC**

**Assigned to Hon. Marcia G. Cooke**

**UNOPPOSED MOTION TO LIFT STAY
AND FOR APPROVAL OF FLSA
SETTLEMENT**

**TO THIS COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that Plaintiffs DESTINY SHELTON ("Shelton"), MYAH KNIGHTON-BLACK ("Knighton-Black"), NAOMI SMITH ("Smith"), and CELINA KONEGAN ("Konegan") (collectively "Plaintiffs"), and Defendants 11USA GROUP, LLC, a Florida Limited Liability Company, GR OPCO, LLC d/b/a E11EVEN MIAMI, a Florida Limited Liability Company, DENNIS DeGORI, an individual, and FRANCES K. MARTIN, an individual (collectively "Defendants") (collectively, altogether, as "The Parties") hereby do, and move this Court to lift the stay on this pending matter for the approval of the settlement agreements reached between the Parties after the mediation with John Thornton on December 22, 2022. *See* Dkt. 53.

The Settlement Agreements are attached to the Declaration of John P. Kristensen and are filed concurrently with the Motion. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 25, Exhibits ("Exs.") 1-4.

///

///

///

///

///

///

///

///

///

///

///

///

///

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declaration and exhibits thereto, the pleadings, and all other papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter. Defendants do not oppose the relief sought in this Motion.

Dated: April 18, 2023                    Respectfully submitted,


                                        */s/ John P. Kristensen*
                                        _____
                                        John P. Kristensen (*Pro Hac Vice*)
                                        **CARPENTER & ZUCKERMAN**
                                        8827 W. Olympic Boulevard
                                        Beverly Hills, California 90211
                                        *kristensen@cz.law*

                                        Jarrett Lee Ellzey, Esq. (*Pro Hac Vice*)
                                        **ELLZEY & ASSOCIATES, PLLC**
                                        1105 Milford Street
                                        Houston, TX 77006
                                        *firm@ellzeylaw.com*

                                        Raymond R. Dieppa, Esq.
                                        **FLORIDA LEGAL SERVICES, INC.**
                                        12550 Biscayne Blvd
                                        Suite 405
                                        Miami, FL 33181
                                        *rd@floridalegal.law*

                                        ***Attorneys for Plaintiffs***

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1 (a)(3)</u>

Counsel for the Parties have met and conferred and Defendants do not oppose the relief

sought in this Motion.


Dated: April 18, 2023                              Respectfully submitted,



*/s/ John P. Kristensen*
John P. Kristensen (*Pro Hac Vice*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, California 90211
*kristensen@cz.law*

Jarrett Lee Ellzey, Esq. (*Pro Hac Vice*)
**ELLZEY & ASSOCIATES, PLLC**
105 Milford Street
Houston, TX 77006
*firm@ellzeylaw.com*

Raymond R. Dieppa, Esq.
**FLORIDA LEGAL SERVICES, INC.**
2550 Biscayne Blvd
Suite 405
Miami, FL 33181
*rd@floridalegal.law*

***Attorneys for Plaintiffs***

## MEMORANDUM OF LAW

### I.   INTRODUCTION

Plaintiffs Destiny Shelton ("Shelton"), Myah Knighton-Black ("Knighton-Black"), Naomi Smith ("Smith"), and Celina Konegan ("Konegan") (collectively "Plaintiffs") performed as independent professional entertainers ("IPEs") at E11EVEN Miami, a nightclub/entertainment venue in Miami, Florida. E11EVEN Miami is owned and operated by Defendant GR OPCO, LLC, which Plaintiffs named, along with its affiliated entity 11USAGroup, LLC, and individuals Dennis DeGori, and Frances K. Martin as Defendants in this action. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 26.

Plaintiff Shelton filed the Complaint on May 1, 2020, alleging that Defendants failed to pay her any wages and asserted claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b). *See* Dkt. 1. Subsequently, Plaintiffs Knighton-Black, Smith, and Konegen subsequently opted into this lawsuit, alleging the same claims as Shelton. *See* Dkts. 4, 8. *See* Kristensen Decl. ¶ 27.

The Court compelled arbitration of the claims pursuant to the Agreements between the parties and stayed this action. *See* Dkt. 44. As  required by the parties' agreements, each of the Plaintiffs filed an individual arbitration with the American Arbitration Association ("AAA"). The parties conducted substantial discovery and pleadings practice. In the arbitration action filed by Plaintiff Smith, Defendants filed a Dispositive Motion seeking a determination that Smith was not an employee of GR OPCO, LLC and therefore not subject to the Fair Labor Standards Act. Plaintiff Smith responded.  Prior to a hearing on the Dispositive Motion, on December 22, 2022 the Parties held a mediation with former Miami Circuit Court Judge John Thornton, which resulted in the settlement of the entire matter, as further explained below. *See* Dkt. 53. *See* Kristensen Decl. ¶ 28.

### II.   NATURE OF CLAIMS AND PROCEDURAL HISTORY

Each of the Plaintiffs alleged they were employed by Defendants in the past three years. Plaintiffs performed at E11EVEN at various times from approximately 2017 to 2019. Plaintiffs

performed at Defendant GR OPCO, LLC's principal place of business located at 29 NE 11th Street, Miami, Florida. E11EVEN Miami is the trade name of Defendant GR OPCO, LLC. Plaintiffs alleged that the business is owned and/or managed by Dennis DeGori and/or Frances K. Martin. *See* Dkt. 1. *See* Kristensen Decl. ¶ 29.

Plaintiffs' causes of action were based on Defendants' not classifying Plaintiffs as employees and not providing wage payments; Defendants' classification of Plaintiffs and other dancers/entertainers as "independent contractors"; and further alleged that Defendants violated the FLSA's provisions concerning tipped employees. The Complaint for damages includes the following causes of action: (1) Failure to Pay Minimum Wage, 29 U.S.C. § 206; (2) Failure to Pay Overtime Wages, 29 U.S.C. § 207; (3) Illegal Kickbacks, 29 C.F.R. § 531.35; (4) Unlawful Taking of Tips, 29 U.S.C. § 203; and (5) Violation of the Florida Constitution, Art. X, § 24. *See* Dkt. 1; *see also* Kristensen Decl. ¶ 30.

On September 28, 2020, Defendants moved to compel arbitration and to stay proceedings pending arbitration. *See* Dkt. 30. After briefings, on November 20, 2020, this Court issued a Report and Recommendations on Defendants' Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration. *See* Dkt. 40. On December 11, 2020, this Court issued an Order Adopting the Report and Recommendation whereby Plaintiffs claims were compelled to arbitration and the present case was stayed pending arbitration. *See* Dkt. 44. *See* Kristensen Decl. ¶ 31.

The parties litigated the claims in AAA for more than a year and a half, with extensive discovery and pleadings practice, including the briefing of a Dispositive Motion on the threshold legal issue in the case. Prior to a hearing on the Dispositive Motion, on December 22, 2022, the Parties attended mediation with Former Miami Circuit Court Judge John Thornton, which was successful and resulted in the settlement agreements presented to this Court today for their approval. *See* Kristensen Decl. ¶ 32; Exs. 1-4.

///

///

III.   THE SETTLEMENT AGREEMENTS

Under the Agreements, Defendants have agreed to pay Plaintiffs a gross settlement in the amount of $166,666.00. Payment is due within fourteen (14) days after Court approval. *See* Kristensen Decl. ¶ 33. The allocations are as follows:

| PLAINTIFF | GROSS SETTLEMENT AMOUNT |
|---|---|
| Shelton | $12,775.59 |
| Konegan | $30,173.93 |
| Smith | $61,858.24 |
| Knighton-Black | $61,858.24 |
| **TOTAL** | **$166,666.00** |

*See* Exs. 1-4.

IV.   PLAINTIFFS' DAMAGES ANALYSIS

After conducting discovery, including seeking documentation regarding the dates and times when Plaintiffs performed at E11EVEN Miami, a more thorough damages analysis was conducted to attempt to discover corroborating evidence of the dates and hours when Plaintiffs claimed to have performed at the venue.

Shelton performed at E11EVEN Miami from July 2017 to approximately October 2017. During this period, Shelton claimed that she perform an estimated three (3) shifts per week or approximately twelve (12) shifts a month over this four (4) month period and would therefore be owed $1,392.00 in minimum wages, plus liquidated damages. Shelton also claimed that she would be forced to tip-out approximately $20.00 at the end of each shift. Shelton argued her house fees could be in the range of a hundred to three hundred a shift. Prior to liquidation, Shelton's claims, at the highest of the estimates, were $7,440.00. *See* Kristensen Decl. ¶ 34.

Konegan performed at E11EVEN Miami from November 2017 to approximately December 2018. During this period, she claimed that she would perform an estimated four (4)

shifts per week or approximately sixteen (16) shifts a month over this eight (8) month period. This equates to one hundred twenty eight (128) shifts recoverable in the statutory period. Ms. Konegan's claim was estimated at $68,016.00 ($531.38 per shift) with the substantial majority of that in forced tips to other workers. *See* Kristensen Decl. ¶ 35.

Smith performed at E11EVEN Miami from approximately May, 2017 to May 2019. During this period, Ms. Smith claimed that she performed an estimated two hundred seventy five (275) shifts during the statutory period. Ms. Smith's claim was estimated at $116,875.00 ($425 per shift) with the substantial majority of that in forced tips to other workers. *See* Kristensen Decl. ¶ 36.

Knighton-Black performed at E11EVEN Miami from 2015 to 2019 (with only three performance days in 2019). Knighton-Black claims to have worked approximately one hundred seventy (170) shifts in this time period (much of which exceeded the statutory period). Knighton-Black's claim was estimated at $94,500.00 ($540 per shift) with the substantial majority of that claimed to include forced tips to Defendant's employees. *See* Kristensen Decl. ¶ 37.

Records maintained by Defendant differed substantially from Plaintiffs' estimates as to the frequency with which each performed at the venue. That discrepancy played a role in weighing the value for each claim. *See* Kristensen Decl. ¶ 38.

Plaintiffs' counsel has significant experience in litigating employment cases. The settlement amounts and terms resulted in significant resolutions for the Plaintiffs. *See* Kristensen Decl. ¶ 39, 48-66; Exs. 7-25.

Plaintiffs' counsels incurred $19,559.41 in costs that are being allocated depending on the costs incurred in litigating each Plaintiff's matter. Plaintiffs' counsel has a lodestar of over $100,000.00 and, pursuant to the retainer agreements and the release signed by the Plaintiffs, are entitled to 45% of the settlement, which is $74,999.50 in fees. The lodestar is greater than the amount of fees Plaintiffs' counsel is seeking in attorneys' fees. Plaintiffs' counsel is seeking an inverse multiplier. *See* Kristensen Decl. ¶ 40.

Plaintiffs' counsel litigated these cases extensively. The settlement amounts are

significant amounts and take into account: the amount of time litigated; having to litigate a number of claims; the ability to reach a resolution and collect, which is relevant in this current unknown economic environment. *See* Kristensen Decl. ¶ 41.

In exchange for the consideration described above, Plaintiffs have agreed to dismiss their causes of action for alleged violations of the FLSA and any state claims stemming from Plaintiffs' employment with the Defendants at issue in the Complaint. *See* Kristensen Decl. ¶ 42; Exs. 1-4.

## V.   LEGAL STANDARD

"When employees bring a private action for back wages under the [FLSA], and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Under *Lynn's Food Stores*, a district court may approve an FLSA settlement only if it reflects "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015) (quoting *Lynn's Food Stores*, 679 F.2d at 1355). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Here, the parties understand and agree that there were bona fide disputes, reflected in the parties' competing arbitration filings, regarding the applicability of the FLSA to Plaintiffs and the amounts that were actually in dispute.

The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 739 (1981). Therefore, an employee's right to fair payment cannot be "abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Id.* Accordingly, FLSA settlements require the

supervision of the Secretary of Labor or the district court. *See Lynn's Food Stores*, 679 F.2d at 1352-53. The FLSA also requires that a settlement agreement include an award of reasonable fees. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action").

The Eleventh Circuit, following *Lynn's Food Stores*, in determining whether a settlement is fair and reasonable, identified the factors such as: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See King v. My Online Neighborhood*, No. 6:06-cv-435-ORL-22JGG, 2007 WL 737575 (M.D. Fla. March 7, 2007) (citing *Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

When considering these factors, the Court should keep in mind the "'strong presumption' in favor of finding a settlement fair." *King*, 2007 WL 737575, at *3 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Moreover, "a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Id.* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) (other internal citations omitted)).

As discussed below, these factors strongly weigh favor of approving this settlement.

## VI.   THE SETTLEMENT IS A REASONABLE COMPROMISE OF A BONA FIDE DISPUTE

The Court should approve the settlements because it reflects a reasonable compromise of *bone fide* disputes regarding Defendants' alleged FLSA liability. There was no collusion in reaching the settlements. The Parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the settlements were reached as a result of good-faith, arms' length negotiations between the Parties, that took a mediation with an experienced mediator, former Judge John Thornton, to resolve. Carpenter & Zuckerman has tried

multiple employment cases and obtained substantial settlements against employers, including against exotic dance clubs in excess of three million dollars in 2020 alone. Carpenter & Zuckerman, Ellzey & Associates, PPLC (formerly Hughes Ellzey, LLP) have been appointed class and collective counsel many times during their decades of practice. *See* Kristensen Decl. ¶ 43.

Mr. Kristensen and Mr. Ellzey tried an FLSA dancer case in July 2022 in the Western District of Texas and obtained a verdict on behalf of two dancers. *See Langley v. RPM Dingin, LLC*, case no. 1:20-cv-890-RP (W.D. Tex. 2000) at Dkt. 139. In addition, Mr. Dieppa served as local counsel and helped Carpenter & Zuckerman and Ellzey & Associates, PLLC deftly navigate through the Court's local rules and practices given his decades of experience in handling employment matters. *Id*.

The Parties have vastly different opinions about the classification of the Plaintiff entertainers as employees or independent contractors. The Parties engaged in written discovery, took the depositions of each of the Plaintiffs, defendant Dennis DeGori and other managerial staff of the club, and exchanged relevant documents, including the agreements between the parties and documents evidencing the Plaintiffs' performances at the venue. The Defendants filed a Dispositive Motion/summary judgment motion in the arbitration filed by Plaintiff Smith to which Plaintiffs' counsel responded, citing to numerous district court orders granting summary judgment obtained by Plaintiffs' counsel. Plaintiffs' counsel were cognizant of two factors. First, based on Plaintiffs' counsel's experience, 25 percent of arbitrators will ignore prevailing and overwhelming law and find for defendants. Plaintiffs' counsel believes that arbitration is not the same playing field as Court. Secondly, as argued in the dispositive motion, several factors distinguished E11even Miami from clubs where dancers were found to be employees, including that it operates as an entertainment venue generally (i.e., the IPEs/dancers are not the sole entertainment), which created unique legal obstacles compared to traditional exotic dance clubs. *See* Kristensen Decl. ¶ 44.

Counsel for the parties were cognizant and aware of each side's arguments and positions

pertaining to employee classification. The risk for Defendants was that in a fee-bearing case, the attorneys' fees would dwarf the damages. Moreover, near the end of discovery, Plaintiffs intended to move for partial summary judgment on the following issues: (1) that Plaintiffs were employees, not independent contractors, as a matter of law; (2) that Defendants' affirmative good faith defense fails as a matter of law; and (3) that Defendants' Dennis DeGori and Frances K. Martin were individually liable as co-employers of Plaintiffs. While Plaintiffs took issue with the accuracy of Defendants' records, few had any records of their own, and thus would have had to rely on their own testimony to rebut Defendants' documents. *Id*.

The Settlement allocations with costs, fees and amounts to the individual Plaintiffs is below:

| Plaintiff | Costs[1] | Fees | Client Allocations | Gross Settlements |
|---|---|---|---|---|
| Knighton-Black | $7,259.49 | $27,836.21 | $26,762.54 | $61,858.24 |
| Smith | $7,259.49 | $27,836.21 | $26,762.54 | $61,858.24 |
| Konegan | $3,541.12 | $13,578.27 | $13,054.54 | $30,173.93 |
| Shelton | $1,499.31 | $5,749.01 | $5,527.27 | $12,775.59 |
| **TOTAL** | $19,559.41 | $74,999.70 | $72,106.89 | $166,666.00 |

The settlement allocations to Plaintiffs reflect the potential recovery and strength of Plaintiffs' cases given the uncertainty of any recovery at trial on the merits and due to the financial condition of Defendants. Had Plaintiffs continued and sought a greater recovery, there was a strong likelihood that any victory, which could not be guaranteed, would have been pyrrhic as greater time and expense would have been incurred in Plaintiffs' counsel lodestar, which exceeds $100,000.00, and spent $19,559.41 or greater in costs. After full preparation for arbitration and arbitration hearings themselves, the lodestar would have been far greater than what Plaintiffs' counsels are receiving under these settlements. *See* Kristensen Decl. ¶ 45.

---

[1] Counsel for Plaintiffs incurred a greater amount of costs than those requested in this Motion. Specifically, counsel for Plaintiffs incurred a total of $26,244.41 in costs. To compensate for the additional $6,685.00 in costs, counsel for Plaintiffs will seek a reduction from their requested fees across all four (4) matters in the amount of $1,671.25 in this case.

The FLSA structure was intentionally designed by Congress as a remedial measure to incentivize and encourage private attorneys to pursue lower damage wage and hour claims with clear liability. "[T]he FLSA is a uniquely protective statute," *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016), and its purposes "require that it be applied even to those who would decline its protections," *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). By awarding reasonable fees and costs to prevailing FLSA litigants, "Congress intended to encourage private citizen enforcement of the [FLSA]." *Soler v. G & U, Inc.*, 658 F.Supp. 1093, 1097 (S.D.N.Y. 1987). Indeed, "Plaintiffs' counsel's role as private attorneys is key to the effective enforcement of these statutes." *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-6094 (PAE), 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014).

The settlement compensates Plaintiffs for their estimated damages. It is greater than Defendants wished to pay and represents a compromise given the circumstances surrounding these matters.

This settlement is favorable to Plaintiffs and, in light of the work performed in the lawsuit and the late juncture of the settlements in the litigation, the fees and costs incurred are reasonable. *See* Kristensen Decl. ¶ 46.

## VII.   THE SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION

As indicated above, the Eleventh Circuit, following *Lynn's Food Stores*, in determining whether a settlement is fair and reasonable identified the factors such as: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See King v. My Online Neighborhood*, No. 6:06-cv-435-ORL-22JGG, 2007 WL 737575 (M.D. Fla. March 7, 2007) (citing *Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)). Plaintiffs will address each of these factors accordingly.

### 1.       The Risk of Fraud or Collusion

When considering this factor, Courts in this Circuit have found no existence of fraud or collusion behind a settlement when "the Parties engaged in arms' length negotiations to arrive at the Settlement and were only able to settle this matter following a two (2)-day mediation presided over by an experienced neutral." *Duren v. Int'l Follies, Inc.*, No. 1:19-CV-01512-ELR, 2022 WL 3337249, at *2 (N.D. Ga. June 6, 2022); s*ee also Lynn's Food Stores*, 679 F.2d at 1354 (noting a settlement reached in the "adversarial context" where the plaintiff is represented by counsel is more likely to be fair and reasonable); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (settlement outside FLSA context showed no signs of fraud or collusion where the settlement was reached before an "experienced and well-respected mediator" following arm's-length negotiations and substantial litigation); *see George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d, 1356, 1369-70 (N.D. Ga. 2019) (holding in FLSA hybrid/collective action, settlement of action by mediation with an experienced mediator confirms that the process was procedurally sound and not collusive).

Here, the Agreements, and each and every one of their provisions, came about as the result of formal and informal discovery, zealous advocacy on both sides, briefing on both sides as to a Dispositive Motion, and substantial arm's-length negotiations between counsel, including mediation before an experienced mediator, former Judge John Thornton. While Counsels for Plaintiffs are receiving payment of reimbursable costs and attorneys' fees from the settlements, there is nothing out of the ordinary in this arrangement. Counsels are not receiving a disproportionate distribution of the settlement, nor are Counsels being amply rewarded while Plaintiffs forgo distribution. On the contrary, each settlement amount is reasonable for each and every Plaintiff, and Plaintiffs' Counsels are requesting to receive less than their lodestar. *See James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d at 1347 (S.D. Fla. 2007) ("fee awards…should not simply be proportionate to the results obtained by the Plaintiff."); *Tyler v. Westway Auto. Serv. Ctr., Inc.*, No. 02-61667-CIV, 2005 WL 6148128, at *5 (S.D. Fla. Mar. 10, 2005) (noting that it is not uncommon for fee requests to exceed the

judgment in FLSA cases). The Parties' settlements are not a "clear sailing" arrangement and Counsels for Plaintiffs do not seek a separate payment for their fees apart from those delineated, and further approved by this Court, as a part of the gross settlement amount.

This factor, therefore, weighs in favor of approval.

### 2. The Complexity, Expenses, and Likely Duration of Litigation

Courts will approve an FLSA settlement wherein there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all. *See Lockwood v. CIS Servs., LLC,* No. 3:16-CV-965-J-39-PDB, 2019 WL 2226126, at *9 (M.D. Fla. May 3, 2019), *report and recommendation adopted*, No. 3:16-CV-965-J-39PDB, 2019 WL 3383628 (M.D. Fla. June 13, 2019). Courts in this Circuit have often found FLSA claims involve complex mixed questions of fact and law, which can often be both difficult and time-consuming. See *George*, 369 F. Supp. 3d at 1370 (referencing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981)). In fact, recovery by any means other than settlements would require additional years in litigation in FLSA hybrid/collective matters. *See George*, 369 F. Supp. 3d at 1370 (referencing *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-CV-103-CAP, 2014 WL 12740375 at *7)).

Several facts in this case point towards the complexity, expenses, and likely duration of these matters. These arbitration matters involved both federal and state law wage and hour claims, which, as referenced by these matters' litigation for over two (2) years, can be both difficult and time-consuming. While discovery in these arbitration matters had all but been completed, pursuing these matters to the full extent of arbitration, including argument of the parties' filed and anticipated dispositive motions, and subsequent motions to vacate the arbitration awards and/or potential appeals by either party given the complexities of the federal and legal issues therein, including a challenge to the constitution of the State of Florida, would mean that recovery, by any means other than settlements, would require additional years of litigation. In contrast, these settlements provide immediate and substantial benefits to Plaintiffs and Defendants alike.

As such, this factor, therefore, weighs in favor of approval.

### 3.     Stage of the Proceedings and Amount of Discovery Completed

Courts in this Circuit also consider the "degree of case development" that counsels have accomplished prior to settlement in order to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *See George*, 369 F. Supp. 3d at 1371 (*citing Lunsford*, 2014 WL 12740375, at *8)).

Here, the Parties engaged in written discovery, took the depositions of each of the Plaintiffs, defendant Dennis DeGori and other managerial staff of the club, and exchanged relevant documents, including the agreements between the parties and documents evidencing the Plaintiffs' performances at the venue. The Defendants filed a Dispositive Motion/summary judgment motion in the arbitration filed by Plaintiff Smith to which Plaintiffs' counsel responded, citing to numerous district court orders granting summary judgment obtained by Plaintiffs' counsel. Plaintiffs' counsel were cognizant of two factors. First, based on Plaintiffs' counsel's experience, 25 percent of arbitrators will ignore prevailing and overwhelming law and find for defendants.  Plaintiffs' counsel believes that arbitration is not the same playing field as Court. Secondly, as argued in the dispositive motion, several factors distinguished E11even Miami from clubs where dancers were found to be employees, including that it operates as an entertainment venue generally (i.e., the IPEs/dancers are not the sole entertainment),  which created unique legal obstacles compared to traditional exotic dance clubs. *See* Kristensen Decl. ¶ 44.

In addition, counsel for the Parties were cognizant and aware of each side's arguments and positions pertaining to employee classification. The risk for Defendants was that in a fee-bearing case, the attorneys' fees would dwarf the damages. Moreover, near the end of discovery, Plaintiffs intended to move for partial summary judgment on the following issues: (1) that Plaintiffs were employees, not independent contractors, as a matter of law; (2) that Defendants' affirmative good faith defense fails as a matter of law; and (3) that Defendants' Dennis DeGori and Frances K. Martin were individually liable as co-employers of Plaintiffs. While Plaintiffs

took issue with the accuracy of Defendants' records, few had any records of their own, and thus would have had to rely on their own testimony to rebut Defendants' documents. *Id*.

Counsel was cognizant and aware of each other's arguments and positions pertaining to employee classification and the ways in which the facts of these arbitrations differed from cases involving traditional exotic dance clubs. The risk for Defendants was that in a fee-bearing case, the attorneys' fees would dwarf the damages. Moreover, near the end of discovery, Plaintiffs intended to move for partial summary judgment on the following issues: (1) that Plaintiffs were employees, not independent contractors, as a matter of law; (2) that Defendants' affirmative good faith defense fails as a matter of law; and (3) that Defendants Dennis DeGori and Frances K. Martin were individually liable  as co-employers of Plaintiffs. While Plaintiffs took issue with the accuracy of Defendants' records, few had any records of their own, and thus would have had to rely on their own testimony to rebut Defendants' documents. *Id*.

As such, this factor, therefore, weighs in favor of approval.

**4.    Likelihood of Plaintiffs' Success on the Merits/Possible Range of Recovery**

The FLSA structure was intentionally designed by Congress as a remedial measure to incentivize and encourage private attorneys to pursue lower-damage wage and hour claims with clear liability. The FLSA's primary remedial purpose is "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Souto v. Sandler*, No. 17-80957-CIV, 2018 WL 8579819, at *2 (S.D. Fla. Feb. 16, 2018) (quoting *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199, 207 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016)).

Importantly, in determining whether a settlement is fair given the potential range of recovery, courts in this circuit are guided by the principle that "the fact a proposed settlement amounts to only a fraction of the potential recovery does not mean that the settlement is unfair or inadequate. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990)).

Here, Plaintiffs obtained an adequate compromise in recovery of that amount. Plaintiffs did not have strong records of the dates or the amount of shifts they worked, nor of the amounts they were forced to tip-out after each shift or charged as house fees by Defendants at the end of each shift. On the contrary, Defendants herein provided substantial records of the minutes Plaintiffs worked, the disbursements made by Plaintiffs at the end of their shifts, and their attended work shifts throughout the period Plaintiffs worked at E11EVEN Miami. Therefore, the above calculations were made considering all factors therein, which played a role in weighing the value of each claim.

Furthermore, Plaintiffs' counsel were aware of two (2) key factors that may have not have gone in their favor, in spite of all of the arduous litigation they could have performed. First, as mentioned above, was that in Plaintiffs'' counsel's opinion and experience, arbitrators 25% will ignore prevailing and overwhelming law and find for defendants. This is based on experience. It's not the same playing field as Court. Second, E11EVEN Miami, is a unique club venue , in that in addition to dancers, other entertainment featured at the club. Popular music artists often perform on a routine basis at the club, including headliners in the music industry often times surrounding popular events outside of the adult-entertainment industry. These issues created unique legal obstacles compared to cases  involving traditional  exotic dance clubs.

Furthermore, this settlement is undoubtedly favorable for each Plaintiff, in light of the work performed in the lawsuit and the juncture of the litigation at the time the settlement was reached, making the settlement amounts entirely reasonable. Counsel spent considerable time pursuing negotiations and preparing a settlement of the matter which is evidenced in their lodestar amount in excess of $100,000.00. Despite Counsel for Plaintiffs' skill, tenacity, and the potential of a large attorneys' fees award contributed to the overall settlement, Counsel for Plaintiffs are only asking for compensation in an amount less than their lodestar. As such, these settlements are unequivocally favorable to Plaintiffs and considering the work performed in the

lawsuit and the juncture of the settlement in this litigation, the settlement amounts are reasonable. *See* Kristensen Decl. ¶ 26-46; Exs. 5-6.

This factor, therefore, weighs in favor of approval.

### 5.    Opinions and Experience of Counsel

Courts in this Circuit give great weight to the recommendations of counsel given their considerable experience in these matters. *See Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989) (In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel) (citations omitted).

Counsels for Plaintiffs and Defendants have substantial experience litigating wage and hour cases and handling complex and class actions. Carpenter & Zuckerman has tried multiple employment cases and obtained substantial settlements against employers, including against exotic dance clubs in excess of three million in 2020 alone. Carpenter & Zuckerman, Ellzey & Associates, PPLC (formerly Hughes Ellzey, LLP) have been appointed class and collective counsel many times during their decades of practice.

Mr. Kristensen and Mr. Ellzey tried an FLSA dancer case in July 2022 in the Western District of Texas and obtained a verdict on behalf of two dancers. (*See Langley v. RPM Dining, LLC*, Case no. 1:20-cv-890-RP (W.D. Tex., Dkt. 139). In addition, Mr. Dieppa served as local counsel and helped Carpenter & Zuckerman and Ellzey & Associates, PLLC deftly navigate through the Court's local rules and practices given his decades of experience in handling employment matters. *See* Kristensen Decl. ¶ 43.

This factor, therefore, weighs in favor of approval.

### VIII.   The Request for Attorneys' Fees and Costs is Reasonable

> #### A.   *FLSA Collective Action Settlements Allow for a Greater Recovery for Plaintiffs than Rule 23 Class Action Settlements*

Counsels for Plaintiffs are seeking less than their incurred fees. Taking this into consideration, Counsels for Plaintiffs request less than their lodestar amount, and rather request

$74,999.70 in attorneys' fees. This is a modest amount compared to many FLSA settlements and is consistent with Congress's intent to incentivize counsels to accept minimum wage cases that would be otherwise uneconomical.

Plaintiffs' requests for attorneys' fees are reasonable and in line with many other district court orders granting similar fees in FLSA settlements. FLSA settlements are distinct from Rule 23 class action settlements and, as such, allow for a greater recovery of settlement awards for the plaintiffs involved. Several district judges around the country have granted similar requests for attorneys' fees for Plaintiffs' counsel within the last three years. *See* Kristensen Decl. ¶¶ 49-67; Exs. 7—25.

In Rule 23 class actions, attorneys often seek fees more than their lodestar by requesting that the court apply a positive modifier. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 271 (D.N.H. 2007) (approving Rule 23 class action settlement with lodestar multiplied of 2.697); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305-06 (3d Cir. 2005), *as amended* (Feb. 25, 2005) (approving a lodestar cross-check multiplier of 4.07); *See also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002). By contrast, here, Plaintiffs' counsels are merely requesting less than their lodestar amount. ¶¶ 49-67; Exs. 7—25.

FLSA settlements are subject to a different standard and allow for a greater recovery of attorneys' fees than Rule 23 class action settlements in order to encourage attorneys to take on these sorts of wage-and-hour cases. Importantly, "neither the text, nor the purpose of the FLSA, supports a proportionality limit on recoverable attorneys' fees." *Fisher v. SD Protection Inc.*, 948 F.3d 593, 603 (2d Cir. 2020). By allowing the recovery of attorneys' fees, the FLSA furthers the statute's goal of protecting employees' rights to fair pay by encouraging lawyers to accept FLSA clients without consideration of their clients' immediate ability to pay. *See Dominguez v. Fiore*, No. 21-24055-CIV, 2022 WL 16961299, at *13 (S.D. Fla. Nov. 16, 2022) (citing *Smith v. WBY, Inc.*, No. 1:16-CV-4017-MLB, 2021 WL 4224012, at *5 (N.D. Ga. Sept. 16, 2021)). Indeed, public policy encouraging attorneys to take on FLSA cases often results in situations where the attorney's fees surpass the Plaintiffs' award. *See Id.* In determining fee

awards, "courts should not 'become green-eyeshade accountants[,] but instead must content themselves with 'rough justice[.]'" *See Purcella v. Mercantile Adjustment Bureau, LLC*, No.18-CV-61268, 2019 WL 6462550, at *2 (S.D. Fla. Nov. 13, 2019), r*eport and recommendation adopted*, No. 18-CV-61268, 2019 WL 6608900 (S.D. Fla. Dec. 5, 2019) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

### B. *Plaintiffs' Attorneys' Fees Totaling 45% of the Settlement Is a Reduction of the Lodestar and Would Therefore Be a Reasonable Award*

It is well settled that a reasonable amount of fees is determined pursuant to the "lodestar approach," which involves calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 485 (D. Ariz. 2019) ("[t]o determine a reasonable attorneys' fee under FLSA, the Court uses the lodestar method."); *Mills v. Cabral*, No. CIV.A. 06-10133-RGS, 2010 WL 2553889, at *1 (D.Mass. June 18, 2010) ("[i]n determining an appropriate award of fees and costs under the FLSA, the court employs the lodestar approach."); *Marrotta v. Suffolk Cty.*, 726 F.Supp.2d 1, 25 (D.Mass. 2010) (approving FLSA attorneys' fees at lodestar amount).

In this case, Plaintiffs' counsel has a lodestar of over $100,000.00. *See* Kristensen Decl. ¶ 40; Exs. 5-6. However, Plaintiffs' counsel is merely seeking $74,999.70 in fees, which is less than their lodestar and consists of 45% of the total settlement. *See id.* In other words, Plaintiffs' counsel is seeking less than what they would otherwise be entitled to based on the time they have spent litigating this matter. *See id.*

The fees sought in this matter are commensurate with the time and effort exerted to achieve a favorable settlement and the overall skill of Plaintiffs' attorneys. Plaintiffs' counsel is well versed in both FLSA collective actions and Rule 23 class actions and have achieved numerous successful outcomes. *See* Kristensen Decl. ¶¶ 49-67; Exs. 7-25. Furthermore,

Plaintiffs' attorneys' hourly rates are reasonable and are similar to those approved by other district courts throughout the country. *Id.*

In *Macklin v. Biscayne Holding Corp et al*, 1:19-cv-00561-WES-PAS (D.R.I. 2019), Plaintiffs' counsel sought approval of a similar FLSA settlement involving the wage and hour claims of exotic dancers. *Id.* In the *Macklin* case, Plaintiffs' counsel sought a reduction of their lodestar and a fee award consisting of 45% of the settlement. *See id.* There, Judge Smith found both the settlement and the attorney's fees and costs to be reasonable. *See id.*

Also, while the lodestar amount is presumed to be a reasonable calculation of attorneys' fees, it is within the Court's discretion to adjust the lodestar figure. *See Marrotta*, 726 F.Supp.2d at 25.   Within the past two years alone, three separate judges in California have granted Plaintiffs' counsel's request to apply a negative modifier to the lodestar in order to achieve a fee award comprising of 45% of the total FLSA settlement. *See* Kristensen Decl. at ¶¶ 49-67; Exs. 7-25. District courts in Florida and Wisconsin have followed suit and also granted Plaintiffs' counsel attorney's fees totaling 45% of the settlement. *Id.*

Ultimately, the FLSA settlements in this case represent a far more favorable outcome for Plaintiffs than if they pursued their claims through a Rule 23 class action. By virtue of their sheer size, class actions often lead to a smaller award for each individual plaintiff. In *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015), a similar exotic-dancer wage-and-hour class case settled for roughly $15 million. *See Hart*, 2015 WL 5577713 at *5. However, the Rule 23 class comprised of 2,208 members and each only received on average $4,254.98. *See id.* Similarly, in *Ortega v. The Spearmint Rhino Companies Worldwide Inc., et al.*, 5:17-cv-00206-JGB-KK (C.D. Cal. July 5, 2021), the district court awarded a net settlement amount of $2,600,000 to an exotic dancer class action. However, the class consisted of 650 individuals and the awards averaged out to only $4,000 per class member. *See id; see also Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 2494569, at *3 (N.D. Cal. May 14, 2020) (granting preliminary approval of Rule 23 settlement on behalf of exotic dancers that would pay "$836 per class member"); *Doe 1-2 v. Deja Vu*

*Servs., Inc.*, 2017 WL 2629101, at *5 (E.D. Mich. June 19, 2017), *aff'd sub nom. Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) (approving Rule 23 settlement on behalf of exotic dancers, many of whom worked in California, where "the average payment from the cash pool will be around $200"); *Byrne v. Santa Barbara Hospitality Services, Inc.*, C.A. No. 17-00527, Dkt. 178 (C.D. Cal. Dec. 14, 2018) (approving settlement proposing to pay 566 claiming class members between $350,884 to $598,453, or average shares of between $620 and $1,057 per participating class member).

Here, Plaintiffs' attorneys seek an amount totaling less than their lodestar amount of over $100,000.00 in the amount of $74,999.70. *See* Kristensen Decl. ¶ 46; Exs. 5-6. Moreover, Plaintiffs' counsel experience as a litigator in FLSA actions yielded positive fruits to Plaintiffs, that they otherwise would not have had they not pursuit this matter with them. This is also a modest amount compared to many FLSA settlements and consistent with Congress's intent to incentivize counsels to take minimum wage cases were it would be otherwise uneconomical.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion in its entirety and approve the settlements between Plaintiffs and

Defendants. Dated: April 18, 2023                     Respectfully submitted,

*/s/ John P. Kristensen*

John P. Kristensen (*Pro Hac Vice*)
CARPENTER & ZUCKERMAN
8827 W. Olympic Boulevard
Beverly Hills, California 90211
*kristensen@cz.law*

Jarrett Lee Ellzey, Esq. (*Pro Hac Vice*)
ELLZEY & ASSOCIATES, PLLC
1105 Milford Street
Houston, TX 77006
*firm@ellzeylaw.com*

Raymond R. Dieppa, Esq.
FLORIDA LEGAL SERVICES, INC.
12550 Biscayne Blvd, Suite 405
Miami, FL 33181
*rd@floridalegal.law*

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Thursday, April 18, 2023, the foregoing document titled **UNOPPOSED MOTION TO LIFT STAY AND FOR APPROVAL OF FLSA SETTLEMENT** was served via CM/ECF upon the following parties pursuant to Fed. R. Civ. P. 5:

Marissa D. Kelley
Dylan Michael Fulop
**KELLEY LEGAL**
401 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Email: marissa@kelleylegalfl.com
Email: dylan@kelleylegalfl.com

*Counsel for Defendants*

Jarrett L. Ellzey
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, TX 77006
Email: firm@ellzeylaw.com

*Co-counsel for Plaintiffs*

John P. Kristensen
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, CA 90211
Email: kristensen@cz.law
Email: kristensenteam@cz.law

*Co-counsel for Plaintiffs*

*/s/ Raymond R. Dieppa*
Raymond R. Dieppa